UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE ROTH, | ) |
| | ) CASE NO. C12-2189-RSM-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) DISABILITY APPEAL |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Michelle Roth proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be reversed and remanded for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1961.[1] She has a college degree and vocational training

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic

REPORT & RECOMMENDATION
PAGE -1

as a paralegal and technical writer, and has previously worked as a paralegal. (AR 169-70.)

On February 19, 2010, Plaintiff filed an application for DIB. (AR 146-47.) That application was denied initially and on reconsideration, and Plaintiff timely requested a hearing. (AR 74-76, 80-83.)

On September 1, 2011, ALJ Thomas Robinson held a hearing, taking testimony from Plaintiff and a medical expert. (AR 23-71.) On September 9, 2011, the ALJ issued a decision finding Plaintiff not disabled. (AR 12-18.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on October 24, 2012 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity between her alleged onset date of March 1, 2004, and her date last insured (DLI), September 30, 2009. (AR 14.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that prior to

---

Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -2

Plaintiff's DLI, the record did not contain medical signs or laboratory findings substantiating the existence of any medically determinable impairment and/or any severe impairment. (AR 14-18.) The ALJ thus found Plaintiff not disabled at step two and did not continue on to any further steps in the sequential evaluation process.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in finding that (1) none of her impairments were medically determinable and/or severe, and that that finding was predicted on (2) an improper rejection of the opinion of her post-DLI treating physician and (3) her own subjective testimony.[2] The Commissioner asserts that the ALJ's decision is supported by substantial evidence and free of legal error.

/ / /

---

[2] Though Plaintiff lists three distinct assignments of error on the first page of her opening brief, Plaintiff's briefing is very poorly organized. Dkt. 12. Her opening brief contains a 17-page section titled "The ALJ Erred at Step Two," but the precise error is not identified and this heading is particularly unhelpful given that the ALJ stopped at step two (so it is the only step at issue). The Commissioner addresses five issues in her response brief. *See* Dkt. 13 at 2. The Court will address only those issues argued with specificity, and departs from Plaintiff's structure in an attempt to logically organize the issues. *See generally Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity).

Leg Pain and Sleep Disorder

The ALJ found that Plaintiff's leg pain and sleep disorder were not medically determinable in light of the inability of Plaintiff's providers to diagnose her with a specific impairment that caused her symptoms of leg pain and insomnia. (AR 14-16.) The ALJ also noted that Plaintiff was not diagnosed with chronic fatigue syndrome (CFS) pre-DLI, and relied on the medical expert's testimony that she did not meet the criteria for CFS before her DLI to find that CFS was not a medically determinable impairment during the relevant time period. (AR 15.)

Considering first Plaintiff's leg pain, the ALJ cited evidence showing that the cause of Plaintiff's leg pain was never diagnosed during the relevant period, because every test performed yielded normal findings. *See* AR 15-16 (citing AR 222-23, 227-46, 252, 267-70). The ALJ's finding that Plaintiff's leg pain was not a medically determinable impairment based on those "completely unremarkable diagnostic and examination findings" is therefore supported by substantial evidence. That Frederick Smith, M.D., opined that Plaintiff's leg pain was "essentially disabl[ing]" (AR 335) does not transform Plaintiff's symptoms into a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005) (". . . [The claimant] can only establish an impairment if the record includes signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms, *i.e.*, [the claimant's representations regarding his impairment.").

The ALJ's analysis of Plaintiff's insomnia is similar, but flawed because Plaintiff's providers repeatedly *diagnosed* her with insomnia and treated her with sleep medications. After reviewing the results of Plaintiff's actigraphy at the Swedish Sleep Medicine Institute,

REPORT & RECOMMENDATION
PAGE -4

the sleep-medicine physician concluded that she had "dyssomnia of unclear etiology." (AR 219-20.) Though the physician indicated that it was unclear what caused Plaintiff's dyssomnia and that further testing would be needed, he nonetheless diagnosed her with dyssomnia and her insomnia continued to be noted and treated by Plaintiff's providers in 2004-2006. *See* AR 337-39, 341-48, 355-56 (documenting Plaintiff's insomnia and the efforts to treat it with medication). The Commissioner's attempt to define "dyssomnia" as simply a description of symptoms rather than a formal diagnosis (Dkt. 13 at 14) is unsupported by a reference to any authority and, moreover, was not a reason articulated by the ALJ for rejecting the evidence of Plaintiff's sleep disorder. Because the ALJ erred by focusing on the lack of known etiology for Plaintiff's sleep disorder without acknowledging that she had been diagnosed with a sleep disorder, the ALJ erred in finding that her sleep disorder was not medically determinable.

The ALJ found that, in the alternative, Plaintiff's sleep disorder was not severe because her symptoms were documented only by self-report, and that the credibility of Plaintiff's self-report was undermined by (1) evidence that she underestimated her sleep times, (2) the lack of a clear etiology for her insomnia, and (3) the two-year gap in treatment before her DLI. (AR 15.) This reasoning is inappropriate at step two, because step two is intended to be a "*de minimis* screening device to dispose of groundless or frivolous claims." *Orellana v. Astrue*, 547 F.Supp.2d 1169, 1172 (E.D. Wash. 2008). The in-depth credibility findings an ALJ typically makes when assessing a claimant's residual functional capacity are inappropriate at step two, because "for purposes of a step two finding, where there is no inconsistency between a claimant's complaints and the diagnoses of record from examining

REPORT & RECOMMENDATION
PAGE -5

and treating doctors, a claim cannot be found 'groundless' under the *de minimis* standards of step two." *Orellana*, 547 F.Supp.2d at 1174 (citing *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)).  Even where an ALJ provided multiple reasons to discount the claimant's credibility, the *Orellana* court found that because the claimant's complaints were consistent with the medical record (which showed intermittent diagnoses of depression and anxiety, with medical opinions indicating moderate to marked functional limitations), and evidence of counseling and medication treatment, there was "not the total absence of objective medical evidence necessary to preclude a step two finding of a 'severe' mental impairment."  547 F. Supp.2d at 1174.

Here, there is no inconsistency between Plaintiff's complaints of fatigue and inability to sleep and the medical record establishing Plaintiff's insomnia treatment, and none of the ALJ's proffered reasons establish an inconsistency.  Plaintiff's underestimation of her sleep times was not considered a credibility issue for her sleep-medicine physician, but was instead listed as a separate diagnosis.  *See* AR 219 (physician's report listing "sleep state misperception" among his diagnoses).  Likewise, the lack of a clear etiology to explain Plaintiff's insomnia was not considered by her provider to be a reason to doubt that she had insomnia, but instead an indication that further testing was needed.  *Id.* ("It may become necessary in the future to obtain a nocturnal polysomnogram to better verify the etiology of [Plaintiff's] sleep disturbance[.]").  Lastly, Plaintiff's gap in treatment does not suggest inconsistency with the medical record establishing her insomnia, particular in light of the various explanations she offered to explain this gap.  *See* AR 31, 45 (testimony regarding the gap in treatment).  Because the ALJ's reasons for rejecting Plaintiff's subjective symptoms

REPORT & RECOMMENDATION
PAGE -6

caused by her insomnia are not based on inconsistency with medical record, the ALJ erred in rejecting her insomnia diagnosis as a severe impairment at step two.

Turning lastly to CFS, though Dr. Spence testified that Plaintiff did not meet the CFS criteria as defined by the Centers for Disease Control (AR 59-62), Plaintiff directs the Court's attention to Social Security Ruling (SSR) 99-2p, 1999 WL 271569, at *2-3 (Apr. 30, 1999), which sets out a non-exhaustive list of medical signs and laboratory findings that can establish the existence of CFS as a medically determinable impairment. SSR 99-2p clarifies that "no specific etiology or pathology has yet been established for CFS," which renders the non-exhaustive list of signs and findings incomplete: "The existence of CFS may be documented with medical signs or laboratory findings other than those listed [here], provided that such documentation is consistent with medically accepted clinical practice and is consistent with the other evidence in the case record." 1999 WL 271569, at *2-3.

With the framework of SSR 99-2p in mind, Plaintiff's argument regarding Dr. Spence's CFS testimony is not well-taken. Dr. Spence testified that using the medically accepted definition of CFS, as defined by the Centers for Disease Control, Plaintiff does not have CFS. (AR 61-62.) Plaintiff does not identify evidence in the record showing that she meets the CFS criteria mentioned in SSR 99-2p, but merely lists her "ongoing complaints" and asserts that they are associated with CFS. *See* Dkt. 12 at 12. Plaintiff's arguments notwithstanding, no doctor during the relevant period diagnosed Plaintiff with CFS, and Dr. Spence testified that Plaintiff did not meet the criteria for CFS as he understood them to be defined. This is substantial evidence in the record to support the ALJ's reasoning regarding CFS.

<u>Somatoform Disorder</u>

Plaintiff argues that the ALJ breached his duty to develop the record by not inquiring further into a possible diagnosis of somatoform disorder. Plaintiff's counsel suggested at the administrative hearing that perhaps Plaintiff's symptoms could be explained by a somatoform disorder diagnosis, and asked the medical expert whether Plaintiff met part of the listing for somatization (Listing 12.07). (AR 63-66.) The medical expert opined that she met part of the Listing, but that he was not sure whether she was as functionally limited as would be required to fully meet the Listing. (AR 64-66.)

The ALJ rejected the medical expert's speculation regarding somatoform disorder, given that the medical expert had never examined Plaintiff, and none of Plaintiff's providers diagnosed her with somatoform disorder pre-DLI, nor did Plaintiff seek any other psychological/psychiatric evaluation during that time period that could have established the diagnosis. (AR 17-18.) The ALJ also noted that Plaintiff's post-DLI treating physician, Milah Frownfelter, M.D., did not diagnose Plaintiff with somatoform disorder. (AR 18.) Thus, the ALJ implicitly found that somatoform disorder was not a medically determinable impairment.

The ALJ's reasoning with regard to somatoform disorder is supported by substantial evidence. As the ALJ noted, no provider diagnosed Plaintiff with a somatoform disorder during the relevant period. One of Plaintiff's sleep-disorder physicians indicated that she may have a "possible somatization disorder around the issues of her eyelids and leg pain," but did not evaluate her for that disorder or formally diagnose her with it. (AR 222-23.) Plaintiff's reference to a post-DLI clinical note indicating that a physician would "consider somatization

[disorder]" is likewise not sufficient to establish the existence of a somatoform disorder as a medically determinable impairment, notwithstanding the fact that the note was written post-DLI. *See* AR 544. Because the ALJ accurately characterized the record as devoid of evidence establishing somatoform disorder as a medically determinable impairment, the record was not ambiguous or inadequate to allow for proper evaluation, and therefore the ALJ did not have a duty to further develop the record in this regard. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

<u>Depression</u>

The ALJ found Plaintiff's depression to be non-severe. (AR 16-17.) Plaintiff argues that the ALJ erred in finding her depression non-severe because she was diagnosed with depression on a number of occasions pre-DLI and had been "chronically depressed" since the 1990s and on antidepressants since June 2004. *See* Dkt. 14 at 8 (citing AR 245). A diagnosis and medication do not alone establish that an impairment is severe, however, because that evidence does not establish that the impairment caused more than a minimal effect on Plaintiff's ability to work. *See* 20 C.F.R. § 404.1520(c). Plaintiff points to medical evidence in the record documenting her depressed mood and other depression symptoms (*see*, e.g., AR 335-347), but none of those clinical notes establish any particular limitations on Plaintiff's ability to work, which the ALJ noted. (AR 16 ("There is no evidence that the claimant had more than mild limitations in activities of daily living, social functioning, or concentration, persistence, or pace during this period. I also note that the claimant did not undergo any

REPORT & RECOMMENDATION
PAGE -9

psychiatric evaluations or receive any mental health counseling prior to September 2009.").)

Plaintiff's subjective statements regarding her symptoms do, however, indicate that her depression had a more than minimal effect on her ability to work, but they are not consistent with the pre-DLI medical evidence documenting her depression diagnosis and treatment via medication. *See, e.g.*, AR 41-42, 186-93. The ALJ noted that the medical evidence showing that her depression symptoms improved with medication (AR at 337-41), and that she failed to seek treatment for any medical issues between October 23, 2007, and her DLI. Because Plaintiff's allegations are not consistent with the scant pre-DLI medical evidence regarding her depression, which shows that her depression symptoms improved with medication, the ALJ did not err in finding that depression was not a severe impairment. *See Allen v. Comm'r of Social Sec. Admin.*, 498 Fed. Appx. 696, 697 (9th Cir. 2012) ("The record shows [the claimant's] mental impairment can be adequately controlled by medication. Therefore, Allen's mental impairment cannot be considered to be severe."). To the degree that the ALJ erroneously inferred that Plaintiff's depression was not severe based on her failure to continue to seek treatment, without considering her possible explanations for that treatment gap, this error is harmless because the ALJ provided a proper reason to find the depression not severe: because the medical record did not establish that more than minimal limitations persisted even with antidepressant medication. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (explaining that harmless errors are "'inconsequential to the ultimate disability determination'" (quoting *Carmickle*, 533 F.3d at 1162)).

### Dr. Frownfelter

The ALJ acknowledged that Plaintiff's post-DLI treating physician, Milah

Frownfelter, M.D., wrote letters in June 2011, opining that Plaintiff was currently disabled as a result of chronic myofascial pain syndrome, depression with anxiety and insomnia, CFS, hyperthyroidism (in remission), and neurocardiogenic syncope with chronic postural hypotension. (AR 534-35). After a review of records, Dr. Frownfelter wrote an additional letter in August 2011, opining that Plaintiff had been disabled as of 2009. (AR 552.) The ALJ gave "little weight" to Dr. Frownfelter's letters, because her treating relationship with Plaintiff started in May 2010, after Plaintiff's DLI, and Dr. Frownfelter's opinions are not supported by the medical records from the pre-DLI time period. (AR 17.)

The ALJ's reasons for discounting Dr. Frownfelter's opinions are specific and legitimate. Though "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis," a post-DLI opinion may nonetheless be discounted if it is inconsistent with medical evidence from the relevant period. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). As the ALJ noted, the hypotension, syncope[3], and hyperthyroidism diagnosed by Dr. Frownfelter post-DLI are not complained of in the pre-DLI medical records. (AR 17.) Pre-DLI references to anxiety are few and it is always mentioned in connection with depression (AR 223, 357), and, as explained above, Plaintiff's depression was well-controlled with medication during the relevant period. (AR 17.) The ALJ also noted that in December 2009, Plaintiff denied problems with depression and anxiety. *See* AR 276. Finally, the ALJ repeated his analysis of Plaintiff's leg pain issue, explaining why it was

---

[3] Though Plaintiff points to other references to dizziness and syncope, that evidence does not establish that Plaintiff experienced those problems during the relevant period. *See* Dkt. 14 at 4 (citing AR 66, 291-92, 304, 385). A February 2010 medical note indicates that Plaintiff had episodic syncope "recently," but refers to an episode in December 2009, which is post-DLI.

REPORT & RECOMMENDATION
PAGE -11

not medically determinable during the relevant period, which contradicted Dr. Frownfelter's diagnosis of chronic myofascial pain syndrome. (AR 17.)

Though the parties' briefing on this issue strays far afield from the inquiry before the Court (whether the ALJ's reasons for discounting Dr. Frownfelter's opinions are specific and legitimate), a review of the reasons articulated by the ALJ reveals that his reasoning should be affirmed. The ALJ identified several aspects of Dr. Frownfelter's opinion that are not corroborated by the medical record during the relevant period, and these are sufficient reasons to discount post-DLI opinions. *See Johnson*, 60 F.3d at 1433. Dr. Frownfelter's second letter cannot overcome the disparity between the conditions and symptoms she records and the conditions and symptoms documented during the relevant period.

## **CONCLUSION**

For the reasons set forth above, this matter should be REVERSED and REMANDED for further administrative proceedings. On remand, the ALJ should reconsider Plaintiff's sleep disorder and whether it or a combination of Plaintiff's impairments are severe, and proceed through the disability evaluation process if necessary.

DATED this 1st day of July, 2013.

Mary Alice Theiler
United States Magistrate Judge